**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:08-CR-424** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **WILLIAM DAVENPORT (6),** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant William Davenport, through appointed counsel, moves for

compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

(Doc. 395).  Davenport asks the court to reduce his sentence to time served based on

his medical conditions and his concerns regarding spread of the COVID-19 virus[1] in

the Federal Correctional Institution, Fort Dix ("FCI Fort Dix"), where he is

currently incarcerated.  The government opposes Davenport's release.  For the

reasons that follow, we will deny Davenport's motion.

## I.   Factual Background & Procedural History

On December 10, 2008, a grand jury returned a superseding indictment

charging Davenport and five other individuals with a number of drug-related

offenses.  Davenport was charged with conspiracy to distribute and possess with

intent to distribute five kilograms or more of cocaine hydrochloride, 50 grams or

---

[1] The COVID-19 virus is also known as "severe acute respiratory
syndrome coronavirus 2" and "SARS-CoV-2."  *Naming the Coronavirus Disease
(COVID-19) and the Virus that Causes It*, WORLD HEALTH ORGANIZATION,
https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-
guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it.
We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as
"COVID-19."

more of cocaine base, and an unspecified amount of marijuana, in violation of 21 U.S.C. § 846 (Count I); distribution and possession with intent to distribute the same, in violation of 21 U.S.C. § 841(a)(1) (Count II); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count III); and obstruction of justice, in violation of 18 U.S.C. § 1503 (Count IV).  (Doc. 31).

On July 1, 2009, Davenport waived indictment and pleaded guilty to a superseding felony information, which charged him with conspiracy to distribute and possess with intent to distribute cocaine hydrochloride and cocaine base, in violation of 21 U.S.C. § 846.  (See Docs. 177-78).  Following preparation of a presentence report, the court sentenced Davenport in December 2009 to a term of imprisonment of 199 months and 3 years' supervised release.  (Doc. 260).  Davenport appealed his sentence to the United States Court of Appeals for the Third Circuit, which affirmed.  See United States v. Davenport, 422 Fed. App'x 115, 116 (3d Cir. 2011) (nonprecedential).  Davenport's sentence was later reduced to 188 months' imprisonment pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the United States Sentencing Guidelines.  (See Docs. 369-72).

Davenport is currently housed at FCI Fort Dix, with a projected release date of April 19, 2022.  (Doc. 397 at 2).  On April 15, 2020, Davenport, acting *pro se*, filed the instant motion for compassionate release.  (See Doc. 395).  That same day, we appointed the Federal Public Defender to determine whether Davenport may be eligible for such relief and, if so, to file any appropriate motion or briefing on his behalf.  (Doc. 396).  One week later, Davenport asked the warden to seek

compassionate release on his behalf, which request the warden denied on May 22. (See Doc. 397 at 2; Doc. 401 at 5).

On June 8, 2020, appointed counsel filed a brief in support of Davenport's motion for sentence reduction and compassionate release.  (Doc. 397).  We ordered an expedited government response, which the government filed on June 12.  (Doc. 401).  Davenport's motion is now ripe for review.

## II.   **Discussion**

Davenport asks the court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239.  Section 3582(c)(1)(A)(i) allows the sentencing court to reduce a term of imprisonment if the court finds, after consideration of the Section 3553(a) factors, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

Both the defendant and the Director of the Bureau of Prisons ("BOP") can move for compassionate release under Section 3582(c)(1)(A).  See id. § 3582(c)(1)(A). But before a defendant can move the court directly, he must either "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or wait for 30 days to lapse from the warden's receipt of a request that the BOP file such a motion.  Id.  In this case, the warden denied Davenport's request to bring a motion on his behalf on May 22, but it does not appear that this denial has been fully appealed.  (See Doc. 397 at 4; Doc. 401 at 5-6).  Nevertheless, the government concedes that Davenport "fully exhausted his administrative claim"

and contends that the motion substantively fails.[2]  We therefore turn to whether

Davenport's motion should be granted on the merits.

### A.      Extraordinary and Compelling Reasons

Congress delegated responsibility for defining "extraordinary and

compelling reasons" for compassionate release to the United States Sentencing

Commission.  See 28 U.S.C. § 994(t).  In Application Note 1 to Section 1B1.13 of

the United States Sentencing Guidelines, the Commission identifies criteria for

determining eligibility for a sentence reduction.  See U.S.S.G. § 1B1.13 cmt. n.1

(U.S. SENTENCING COMM'N 2018).  Eligible circumstances include terminal illness

as well as "a serious physical or medical condition" or "deteriorating physical

or mental health because of the aging process" if the impairment "substantially

diminishes" the ability to provide self-care within a correctional facility and is

---

[2] We note our disagreement with the government's legal conclusion that
Davenport has exhausted his administrative remedies.  We have previously held
that, should the warden respond to a request to bring a motion for compassionate
release on a prisoner's behalf within the 30-day timeframe provided by 18 U.S.C.
§ 3582(c)(1)(A)—thus not allowing 30 days to "lapse" without action—the prisoner
"must fully exhaust the warden's denial within the BOP before the court can
entertain his motion."  See United States v. Petrossi, No. 1:17-CR-192, Doc. 133 at 2
& n.1 (M.D. Pa. Apr. 28, 2020) (collecting cases).  Moreover, the government's
concession of exhaustion in this case directly contradicts its position in Petrossi.
See id., Doc. 139 at 4 n.2, 7-14 & n.3 (M.D. Pa. May 26, 2020).  There, the government
acknowledged that competing interpretations of the compassionate release statute
exist and stated that, in the absence of binding circuit authority, "the U.S. Attorney
for the Middle District of Pennsylvania has determined that . . . this Court's
construction of § 3582(c)(1)(A) [regarding exhaustion] is correct."  Id. at 4 n.2, 7.
Nonetheless, the government may waive the defense of statutory exhaustion by
explicitly conceding it, even if that concession is based on "a flawed legal
conclusion."  See Sharrieff v. Cathel, 574 F.3d 225, 229 (3d Cir. 2009).  In light of the
government's explicit concession in this case, we conclude that the government has
waived the defense of failure to exhaust.

one from which the defendant "is not expected to recover."  Id. at cmt. n.1(A)(i), (A)(ii)(I), (A)(ii)(III).  A defendant may also be eligible for an age-based reduction if he is 65 or older, is experiencing "deterioration in physical or mental health because of the aging process," and has served the lesser of 10 years or 75 percent of his term of imprisonment.  Id. at cmt. n.1(B).  The Application Note closes with a catch-all, authorizing a reduction when the Director of the BOP designates an extraordinary or compelling reason other than or in combination with the foregoing circumstances.  Id. at cmt. n.1(D).[3]

The BOP has developed internal criteria for addressing prisoner requests for compassionate release motions.  For elderly prisoners with medical conditions, the BOP considers the prisoner's age (specifically whether they are 65 or older), the severity of the medical condition and its impact on the ability to function in a prison setting, whether conventional treatment may substantially improve the condition, and whether the prisoner has served at least half of their sentence.  FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50: COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(G) at 6 (Jan. 17, 2019).  The BOP also considers how old the prisoner was when the offense was committed, whether the prisoner suffered from the medical condition at that

---

[3] We recognize that this policy statement has not been amended since passage of the First Step Act.  See United States v. Kelly, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (quoting United States v. Perdigao, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020)).  We agree with those courts that have found that Section 1B1.13 still "provides helpful guidance" even if it is no longer controlling.  Id. (quoting United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

time, and whether the condition existed and was known to the court at sentencing.
See id.

Davenport asserts that his medical conditions and fear of contracting the
COVID-19 virus in an institutionalized setting where inmates have tested positive
combine to establish extraordinary and compelling reasons to grant compassionate
release.  He states that he suffers from hypertension, hyperlipidemia, obstructive
sleep apnea, and an elevated body mass index ("BMI") of 39.2 (approaching "Class
3" or "severe" obesity designation).  (See Doc. 397 at 7); *Overweight & Obesity:
Defining Adult Overweight and Obesity*, CENTERS FOR DISEASE CONTROL AND
PREVENTION, https://www.cdc.gov/obesity/adult/defining.html (last visited June 22,
2020).  According to Davenport, these medical conditions put him at higher risk for
severe illness from COVID-19.  (Doc. 397 at 6-8 & n.9 (citing *Coronavirus Disease
2019 (COVID-19): At Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND
PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
precautions/groups-at-higher-risk.html (last visited June 22, 2020))).

We do not find that Davenport's circumstances represent "extraordinary and
compelling reasons" that would warrant early release.  Of his various medical
problems, only severe obesity appears on the CDC's list of "conditions and other
risk factors" that increase the likelihood for severe illness from COVID-19.  See
*Coronavirus Disease 2019 (COVID-19): At Risk for Severe Illness*, CENTERS FOR
DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-
ncov/need-extra-precautions/groups-at-higher-risk.html.  Davenport's BMI,
moreover, falls short of "severe" obesity.  We do not downplay the seriousness of

Davenport's medical conditions.  Rather, we simply note that—according to the CDC—none of them elevate his risk for severe illness from COVID-19, distinguishing his case from others who have been granted early release under Section 3582(c)(1)(A)(i).  We further observe that Davenport's medical conditions are currently controlled by medication and lifestyle and are not the type of health issues that are beyond the ability of the BOP to manage.  (See Doc. 401 at 8-9).

Davenport is presently incarcerated at FCI Fort Dix.  As of June 21, 2020, that facility has 14 positive inmates, 0 positive staff, 0 inmate or staff deaths, 28 recovered inmates, and 5 recovered staff.  See COVID-19 Coronavirus, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (follow "Full breakdown and additional details" hyperlink) (last updated June 21, 3:00 p.m.).  These statistics rank FCI Fort Dix at fifteenth out of approximately 136 facilities for active infections, and twenty-second for total positive inmate tests.  Id.  Such numbers, while not insignificant, do not reflect dire situations like those that previously occurred at FCI Oakdale I, which experienced inordinately high infection and death rates in comparison to other facilities.  See Kelly, 2020 WL 2104241, at *7 & nn.16-17 (citations omitted).

Finally, Davenport admits that, even if he were granted early release, he has an outstanding Pennsylvania detainer for violation of parole.  (See Doc. 397 at 1 n.2).  Davenport argues that, "based on the circumstances at FCI Fort Dix, incarceration in a state prison in Pennsylvania . . . is likely less of a risk than being housed at FCI Fort Dix."  (Id.)  We are not so sure.  According to data from the Pennsylvania Department of Corrections, at least four correctional facilities in the

state system have higher numbers of COVID-19 virus infections than FCI Fort Dix.
See *Coronavirus*, PA. DEP'T OF CORR., https://www.cor.pa.gov/Pages/COVID-19.aspx
(follow "Read the latest PA DOC Inmate and Employee COVID-19 Testing data"
hyperlink) (last updated June 22, 5:00 p.m.).  Accordingly, we conclude that
Davenport has not established "extraordinary and compelling reasons" warranting
early release under Section 3582(c)(1)(A)(i).

**B.     Section 3553(a) Factors**

Assuming *arguendo* Davenport's circumstances qualified as extraordinary
and compelling, our analysis would still be guided by the Section 3553(a) factors.[4]
See 18 U.S.C. § 3582(c)(1)(A).  Davenport was sentenced to a term of 199 months'
incarceration, which was later reduced under Amendment 782 to 188 months.  His
current projected release date is April 19, 2022.  We find that the Section 3553(a)
factors do not support an almost two-year reduction in Davenport's sentence.

We note at the outset that Davenport's existing sentence already reflects a
three-year variance below the bottom of the Guidelines range and was further
reduced by Amendment 782.  We found at the time of sentencing, and reaffirm now,

---

[4] The Section 3553(a) factors are (1) "the nature and circumstances of
the offense and the history and characteristics of the defendant"; (2) "the need
for the sentence imposed . . . to reflect the seriousness of the offense, to promote
respect for the law, and to provide just punishment for the offense; . . . to afford
adequate deterrence to criminal conduct; . . . to protect the public from further
crimes of the defendant; and . . . to provide the defendant with needed educational
and vocational training, medical care, or other correctional treatment in the most
effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence
and sentencing range recommended by the United States Sentencing Guidelines;
(5) pertinent policy statements issued by the United States Sentencing Commission;
(6) "the need to avoid unwarranted sentencing disparities" among similarly situated
defendants; and (7) the need for restitution.  18 U.S.C. § 3553(a).

that the sentence imposed reflects an appropriate balancing of the mitigating considerations (including Davenport's difficult upbringing, drug addiction, and health issues) with the aggravating nature of the offense conduct. We reiterate that, at sentencing, Davenport was found to be accountable for a significant amount of narcotics, obstruction of justice, and possession of firearm, and he committed the underlying drug-trafficking offense while on parole. Davenport received a longer sentence than several coconspirators based on the extent of other defendants' cooperation and Davenport's more significant criminal history.

We are not unsympathetic to Davenport's concern—or to any prisoner's concern—that the COVID-19 virus has breached the walls of the federal institution where he is housed. But that concern alone does not supply an "extraordinary and compelling" reason for a sentence reduction. Nor does it counterbalance the aggravating Section 3553(a) factors revisited above or the fact that Davenport's sentence already reflects a significant downward variance. We thus decline to exercise our discretion to reduce Davenport's sentence at this time.

**III.** **Conclusion**

For all of these reasons, we will deny Davenport's motion (Doc. 395) for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    June 23, 2020